Filed 9/2/22  In re J.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES,        Plaintiff and Respondent,        v. I.M.,        Defendant and Appellant. | D080007  (Super. Ct. No. JJP000771) |

APPEAL from an order of the Superior Court of Imperial County, Marco D. Nunez, Judge.  Conditionally reversed and remanded with directions.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Veronica A. Henderson, Office of County Counsel, for Plaintiff and Respondent.

I.M. (Mother) appeals from the juvenile court's order terminating her parental rights over J.M. pursuant to Welfare and Institutions Code section 366.26.[1] Mother argues the Imperial County Department of Social Services (Department) and the juvenile court did not comply with their initial inquiry duties under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and section 224.2. Mother also argues the Department failed in its duty to report its inquiry efforts to the juvenile court. We disagree that the Department failed to report on its inquiry efforts. However, we conclude the Department and the juvenile court failed to satisfy their initial inquiry obligations. We conditionally reverse and remand for the limited purpose of ensuring compliance with ICWA and section 224.2.

FACTUAL AND PROCEDURAL BACKGROUND[2]

The Department initiated this dependency proceeding under section 300, subdivision (b)(1) on behalf of J.M. in February 2020, alleging there was a substantial risk J.M. would suffer serious physical harm or illness based on Mother's failure to provide adequate supervision or protection, and regular care due to illness, developmental disability, or substance abuse. The Department alleged Mother tested positive for amphetamines and cannabinoids, and admitted consuming methamphetamine while pregnant with J.M. The Department further alleged J.M. tested positive for phencyclidine, amphetamines, and methamphetamine the day after he was born.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] In light of the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings focused on the facts relevant to the issues on appeal.

In its February 20, 2020 detention report, the Department reported that J.M. was removed from Mother and placed with father J.D. (Father) on February 14, 2020.[3] The Department also reported that on February 11, 2020, both Mother and Father informed a social worker that the family does not have any Indian ancestry. It also reported that a social worker spoke to maternal aunt M.M. about placement for J.M., to which M.M. agreed.

Mother and Father appeared at the detention hearing on February 20, 2020. That same day, both Mother and Father completed ICWA-020 Parental Notification of Indian Status forms stating they had no Indian ancestry. The court did not ask Mother and Father in court whether they know or have reason to know J.M. is an Indian child, nor did the court instruct Mother and Father to inform the court if they subsequently receive information that provides reason to know J.M. is an Indian child. The court found that J.M. does not come under the provisions of ICWA.

In its March 18, 2020 jurisdiction report, the Department stated that on March 12, 2020, Father again denied having any Indian ancestry. Mother and Father appeared at the jurisdiction hearing, however, the court did not make any ICWA inquiry. The court set the matter for a pre-trial hearing.

On April 13, 2020, the Department filed an amended petition under section 300, subdivision (b)(1), adding allegations that Father tested positive for methamphetamine and amphetamine in March 2020. The Department also alleged Father admitted to consuming up to eight cans of beer every day while Father's 17-year-old child K.D. (J.M.'s half-sibling) supervises J.M. Additionally, K.D. disclosed to a social worker that she had requested behavioral services for " 'stress, depression, and anxiety,' " and that she informed Father of her behavioral health concerns and needs. Father had

---

3    Father is not a party to this appeal.

nonetheless left J.M. in K.D.'s care. Father also failed to acquire medical coverage for J.M. and missed two behavioral health evaluations for J.M. due to the lack of medical coverage. Finally, a social worker observed J.M. to be in "filthy clothes" with urine stains, an "extremely soiled diaper," and dried urine on J.M.'s inner thighs.

In its April 14, 2020 detention report, the Department reported that J.M. was removed from Father's custody and placed in the Betty Jo McNeece Receiving Home on April 9, 2020. The Department also reported that on April 13, 2020, Mother again denied having any Indian ancestry.

In its May 13, 2020 jurisdiction report, the Department reported that J.M. was placed with maternal aunt, M.M. on April 21, 2020.

In its June 10, 2020 jurisdiction and disposition report, the Department reported that it had contacted two of J.M.'s maternal aunts, M.M. (with whom J.M. was placed) and G.P. in February 2020. The Department did not report making any ICWA inquiries of M.M. or G.P.

At the June 15, 2020 jurisdiction and disposition hearing, Father's counsel informed the court that she "lost track" of Father, Father was not answering her phone calls, Father's phone goes straight to voicemail, and Father stopped attending visits. At the continued hearing on June 17, 2020, Father's counsel informed the court that she was still unable to contact Father, but a proof of service confirmed that he was served with the jurisdiction and disposition report. Mother's and Father's counsel both submitted on the report. The court declared J.M. a dependent, removed him from Mother's and Father's custody, and ordered reunification services for Mother and Father. J.M. was ordered to remain placed with maternal aunt M.M.

4

After several continuances, the six-month review hearing occurred on March 1, 2021, at which time the court terminated reunification services and scheduled a section 366.26 hearing.

Father and maternal aunt M.M. appeared at the scheduled section 366.26 hearing on July 7, 2021. The court did not make any ICWA inquiries. The court continued the hearing to allow time to review a section 388 petition filed by Mother.

At the continued hearing on August 25, 2021, the Department informed the court that it lost contact with Mother and the court granted the Department's motion to allow service on Mother's counsel. The court again continued the hearing under section 366.26 and for Mother's section 388 petition.

On November 15, 2021, Mother's counsel informed the court that he did not know Mother's whereabouts. The court made a good notice finding for Mother and Father and continued the hearing.

At the next hearing on December 13, 2021, Mother's counsel stated there was no justification to proceed with Mother's section 388 petition. The court took the section 388 petition off calendar and continued the section 366.26 hearing.

The court terminated Mother's and Father's parental rights on January 24, 2022.

## DISCUSSION

Mother argues the Department and the court did not satisfy their initial inquiry obligations under ICWA. She also argues the Department failed to satisfy its obligation to report on its inquiry efforts.

## A. Applicable Law

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) Under California law adopted pursuant to ICWA, the juvenile court and Department have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.) An "Indian child" is defined in the same manner as under federal law, i.e., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C. § 1903(4); accord, Welf. & Inst. Code, § 224.1, subd. (a) [adopting the federal definition].)

As outlined by this court in *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*), "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Department's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Department 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) However,

6

where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid*.)

### B. ICWA Inquiry Duties

Mother argues the Department failed to ask extended family members about J.M.'s potential Indian ancestry. She also argues the juvenile court erred in finding that J.M. did not come under the provisions of ICWA at the February 20, 2020[4] detention hearing without making an inquiry of Mother and Father while they were present at the hearing.[5] We agree.

During the first stage of initial inquiry, "[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the [Department], the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the

---

[4] In her opening brief, Mother states that the juvenile court made this finding at a February 10, 2020 hearing. This date appears to be a typographical error where the court made this finding at the February 20, 2020 detention hearing and no hearing occurred on February 10, 2020.

[5] To the extent Mother's notice of appeal expressly challenged only the January 24, 2022 order terminating Mother's parental rights in which the juvenile court did not make any ICWA finding, we construe her appeal as challenging both the February 20, 2020 detention order in which the court expressly found ICWA did not apply as well as the January 24, 2022 order terminating parental rights in which the court impliedly found ICWA continued to not apply, given the affirmative and continuing duties of the Department and juvenile court to inquire regarding J.M.'s possible Indian ancestry. (§ 224.2, subd. (a); see *Isaiah W.*, *supra*, 1 Cal.5th at p. 15 [because of court's affirmative and continuing duty, parent may challenge order terminating parental rights although parent did not appeal prior dispositional order in which court found ICWA did not apply; court's termination order "necessarily subsumed a present determination of ICWA's inapplicability"].)

child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048–1049.) ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

Additionally, pursuant to section 224.2, subdivision (c), "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."

Here, the Department was in contact with maternal aunt M.M., with whom J.M. was placed, as well as another maternal aunt G.P. Although M.M. and G.P. qualified as extended family members subject to the Department's initial inquiry obligations, the Department does not claim that it asked M.M. or G.P. about J.M.'s potential Indian ancestry and our review of the record does not reveal such inquiries. As such, the Department failed to satisfy its initial inquiry obligation under section 224.2, subdivision (b).

Additionally, Mother and Father were present at the February 20, 2020 detention hearing as well as the March 18, 2020 jurisdiction hearing. Father and maternal aunt M.M. were also present at a July 7, 2021 hearing. The court did not inquire of Mother, Father, or M.M. whether they knew, or had reason to know, that J.M. was an Indian child and did not instruct them to

8

inform the court if they subsequently received information that provided reason to know J.M. is an Indian child. The Department argues the ICWA-020 forms completed by Mother and Father satisfied the court's duty. However, the Department provides no authority to support this proposition. Moreover, while the forms were filed on the same day as Mother's and Father's first appearance in court, on February 20, 2020, there is no indication in the record whether the forms were filed before or after the hearing, and no indication the court reviewed or relied on the forms. The court made no mention of ICWA during the hearing and included its finding that ICWA did not apply in its minute order only. As such, based on this record, we cannot conclude the court satisfied its independent inquiry duties under section 224.2, subdivision (c).

Where, as here, there is an inadequate initial inquiry, under ICWA and related California law, "the error is in most circumstances . . . prejudicial and reversible." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 435.)[6] Because substantial evidence does not support the juvenile court's finding that ICWA did not apply, we conditionally reverse the order terminating parental rights with a limited remand for the Department and the juvenile court to comply with ICWA and section 224.2.

### C. ICWA Reporting Duties

Mother argues the Department failed to satisfy its duty to report its inquiry efforts to the juvenile court, citing California Rules of Court, rule 5.481(a)(5). We disagree.

California Rules of Court, rule 5.481(a)(5) provides:

> "The petitioner must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received

---

[6] The Department did not address prejudice in its respondent's brief.

9

pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes."

Mother argues the Department "ignored their duty under the law to disclose in a timely fashion any and all further inquiries" as to Mother's and Father's ICWA declarations. Mother cites section 224.2, subdivision (e), which addresses the duty of further inquiry when there is a "reason to believe" the child has Indian ancestry. However, Mother's and Father's ICWA-020 forms declared that they did not know of any Indian ancestry. Therefore, Mother's and Father's ICWA declarations did not trigger a duty for the Department to conduct a further inquiry. (See *In re S.R.* (2021) 64 Cal.App.5th 303, 315 ["both mother and father filed ICWA-020 forms at the time of the detention hearing declaring they didn't know of any Indian ancestry on either side of the family. These preliminary responses didn't provide reason to know *or* reason to believe an Indian child might be involved in the dependency"].) Indeed, the Department did not receive any information giving rise to a "reason to believe." Thus, the duty of further inquiry was not triggered and the Department was not compelled to report on any further inquiry. Further, aside from the ICWA-020 forms, the Department did inform the court of its initial inquiry efforts when the Department asked Mother about potential Indian ancestry on February 11, 2020 and April 13, 2020, and when it asked Father about potential Indian ancestry on February 11, 2020 and March 12, 2020

## DISPOSITION

The juvenile court's order terminating parental rights is conditionally reversed. The matter is remanded to the juvenile court with directions for the Department to comply with the inquiry provisions of ICWA and section

10

224.2 (and, if applicable, the notice provisions under section 224.3), including inquiry of maternal aunt M.M. and maternal aunt G.P. Additionally, the juvenile court is directed to conduct a hearing to order Mother, Father, and maternal aunt M.M. to appear at a subsequent hearing for the court to ask them whether they know or have reason to know that J.M. is an Indian child and instruct them to inform the court if they subsequently receive information that provides reason to know J.M. is an Indian child, in compliance with section 224.2, subdivision (c). If Mother and/or Father fail to appear at the subsequent hearing, the juvenile court must confirm with counsel for Mother and/or Father that they have not been able to contact Mother and/or Father. If, after completing its inquiry, neither the Department nor the juvenile court has reason to believe or reason to know J.M. is an Indian child, the order terminating parental rights shall be reinstated. If the Department or the juvenile court has reason to believe or reason to know J.M. is an Indian child, the juvenile court shall proceed accordingly.

O'ROURKE, J.

WE CONCUR:

HALLER, Acting P. J.

DATO, J.

11